# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL CASE NO. 3:25-cv-00269-MR

| | |
|---|---|
| AUSTIN NATHANIEL HANNON, )<br><br>Plaintiff, )<br><br>vs. )<br><br>MICHAEL BEER, et al., )<br><br>Defendants. )<br>_____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on Defendants Michael Beer and Scott Wyatt's Motion for Summary Judgment [Doc. 19].

## I. BACKGROUND

The Plaintiff Austin Nathaniel Hannon filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Gaston County Jail ("GCJ") while he was a pretrial detainee.[1] The Plaintiff's unverified Complaint passed initial review against Michael Beer, a corporal ("Officer Beer"), and Christopher Wyatt, the detention chief ("Chief Deputy

---

[1] According to the North Carolina Department of Adult Corrections' website, the Plaintiff is now a state inmate at the Tabor Correctional Institution. See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=1481002&searchLastName=hannon&searchFirstName=austin&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed July 28, 2026); Fed. R. Evid. 201 (addressing judicial notice). The Plaintiff has failed to notify the Court of his change of address. [See Standing Order of Instructions].

Wyatt"), for the use of excessive force and imposing unconstitutional conditions of confinement.  [Doc. 1: Compl.; Doc. 5: Order on Initial Rev.].  The Plaintiff seeks "monetary compensation[,] punitive relief," and a jury trial. [Doc. 1 at 5].

On April 2, 2026, the Defendants filed a Motion for Summary Judgment.  [Doc. 19: MSJ, Exhibits; Doc. 20: MSJ Memo.].  Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  [Doc. 25: Roseboro Order].  The Plaintiff has not responded and the time to do so has expired.  This matter is ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

2

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. <u>Anderson</u>, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

4

## III. FACTUAL BACKGROUND

The following is a summary of the relevant portions of the undisputed forecast of evidence.[2]

The Plaintiff was a pretrial detainee at the GCJ on charges including attempted murder and assault on a government official. [Doc. 19-1: Beer Decl. at ¶ 5]. On January 25, 2025, Officer Beer was conducting standard security rounds. [Id. at ¶ 2]. Chief Deputy Wyatt accompanied Officer Beer to observe a new technology system in use. [Doc. 19-2: Wyatt Decl. at ¶ 2].

The Plaintiff was using his tablet for a phone call inside his cell. [Doc. 19-1: Beer Decl. at ¶ 3]. Officer Beer told the Plaintiff to remove his mattress from the floor, and continued his rounds. [Id. at ¶ 4]. Chief Deputy Wyatt heard the Plaintiff say something about being on the phone and that he would pick up the mattress later. [Doc. 19-2: Wyatt Decl. at ¶ 3]. Officer Beer returned to the Plaintiff's cell when he realized there was an issue, and the control booth was instructed to open the cell door. [Doc. 19-1: Beer Decl. at ¶ 4; Doc. 19-2: Wyatt Decl. at ¶ 5].

After the cell door opened, the Plaintiff continued refusing to move his mattress. [Doc. 19-2: Wyatt Decl. at ¶ 5]. Chief Deputy Wyatt instructed

---

[2] The unverified Complaint cannot be considered on summary judgment as a forecast of evidence. Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes).

Officer Beer to take the Plaintiff's tablet.  [Id.].  When Officer Beer asked for the tablet, the Plaintiff cursed at him, refused, and continued with his phone call.  [Id.; Doc. 19-1: Beer Decl. at ¶¶ 4-5].  Officer Beer knew that Plaintiff was charged with multiple violent crimes.  [Doc. 19-1: Beer Decl. at ¶ 5].  Given the Plaintiff's visible agitation, Officer Beer determined it would be unwise to enter the cell and possibly engage in a struggle for control of the tablet.  [Id.].  Chief Deputy Wyatt told Officer Beer to spray the Plaintiff, and Officer Beer directed a one-second burst of OC spray to the Plaintiff's face.  [Id. at ¶ 6; Doc. 19-2: Wyatt Decl. at ¶ 5].  Officer Beer then instructed the Plaintiff to get on the ground.  [Doc. 19-1: Beer Decl. at ¶ 6; Doc. 19-2: Wyatt Decl. at ¶ 5].  When the Plaintiff failed to comply, Chief Deputy Wyatt stepped into the cell, grabbed the Plaintiff by the back of the head and the left arm, and pulled him forward onto the mattress that was lying on the ground by the cell door.  [Doc. 19-1: Beer Decl. at ¶ 6; Doc. 19-2: Wyatt Decl. at ¶ 5].  Chief Deputy Wyatt held the Plaintiff on the mattress while Officer Beer handcuffed him and removed the tablet.  [Doc. 19-1: Beer Decl. at ¶ 6; Doc. 19-2: Wyatt Decl. at ¶ 5].

The Plaintiff was escorted to a wash station where he rinsed his eyes. [Doc. 19-1: Beer Decl. at ¶ 6; Doc. 19-2: Wyatt Decl. at ¶ 5].  The Plaintiff was then taken to a shower where his handcuffs were removed and he was

allowed to decontaminate. [Doc. 19-1: Beer Decl. at ¶ 7]. Officer Beer took the Plaintiff to medical for evaluation. Upon arrival, a nurse briefly looked at the Plaintiff and instructed Officer Beer to place him in a medical holding cell, which Officer Beer did with assistance from other officers. [Id.]. The Plaintiff's handcuffs were removed and the door was closed. Officer Beer and Chief Deputy Wyatt had no further contact with the Plaintiff that day. [Id.; Doc. 19-2: Wyatt Decl. at ¶ 5].

Officer Beer and Chief Deputy Wyatt first learned from this lawsuit that the Plaintiff is complaining that it took jail staff three days to provide him with new sheets after the January 25 pepper spray incident. [Doc. 19-1: Beer Decl. at ¶ 8; Doc. 19-2: Wyatt Decl. at ¶ 6]. Officer Beer and Chief Deputy Wyatt did not participate in or direct any inaction regarding the Plaintiff's sheets. [Doc. 19-1: Beer Decl. at ¶ 8; Doc. 19-2: Wyatt Decl. at ¶ 6]. Officer Beer and Chief Deputy Wyatt did not participate in, or direct, the vaping[3] of the Plaintiff's cell on another occasion and they did not participate in, or direct, any inaction that left Plaintiff in the vaped cell for four days. [Doc. 19-1: Beer Decl. at ¶ 8; Doc. 19-2: Wyatt Decl. at ¶ 6].

---

[3] "Vaping" refers to the delivery of concentrated OC mist into a confined area to overcome an inmate's aggression or resistance. Unlike traditional OC spray that is more of a liquid, the use of OC vapor requires minimal decontamination. [See Doc. 19-4: Long Decl. at ¶ 2].

7

Since at least March 31, 2024, all inmates at GCJ have been afforded daily access to a kiosk in each cell block, allowing written communications with jail staff and the submission of grievances. [Doc. 19-4: Long Decl. at ¶ 1]. Inmates can also submit grievances on electronic tablets that are issued between 7:00 a.m. and 11:00 p.m. daily. [Id. at ¶ 3]. All submitted grievances are electronically retained in the Detention Division's information management system. [Id.].

The Plaintiff submitted a grievance regarding the January 25, 2025 use of force; however, he never asserted that it took jail staff three days to replace his mace-covered sheets. [Id. at ¶ 4]. Nor did the Plaintiff submit a grievance about "vaping" his cell on another occasion, or about being left in his cell after vaping. [Id.].

Footage from Officer Beer's body worn camera ("BWC")[4] depicts the following:

| | |
|---|---|
| 00:13 | While walking past Cell C, Beer states "Get your mat up, Hannon," and he continues walking. |
| 00:24 | Beer passes several cells, then turns around; Wyatt can be seen standing outside Plaintiff's cell. |
| 00:36 | Wyatt indicates that Plaintiff's cell door should be opened, and Beer calls that instruction over the radio. |

---

[4] Because Chief Deputy Wyatt's duties are mostly administrative, he was not wearing a BWC. [See Doc. 19-2: Wyatt Decl. at ¶ 4].

| | |
|---|---|
| 00:40 | Wyatt opens Plaintiff's cell door. Plaintiff is standing in the doorway, holding a tablet. |
| 00:44 | Plaintiff says "I'm on the phone, I'm not fixing to drop what I'm doing…." Wyatt tells him "Yeah, you are" repeatedly, and Plaintiff continues arguing. |
| 00:51 | Wyatt instructs Beer to take the tablet. Beer reaches for the tablet; Plaintiff retreats into the cell and begins cursing. |
| 00:55 | Wyatt again tells Plaintiff to hand over the tablet. Plaintiff continues his phone conversation. |
| 1:01 | Wyatt instructs Beer, "Spray him." |
| 1:05 | Beer administers a brief spray to Plaintiff's face. Plaintiff backs away and continues talking on the phone. Officers state "get on the ground" repeatedly. |
| 1:10 | Plaintiff backs away and sits on the commode. |
| 1:11 | Wyatt steps into the cell, grabs Plaintiff, and places him facedown on a mattress by the door. |
| 1:15 | Plaintiff drops the tablet and Beer applies handcuffs. |
| 1:35 | Plaintiff is helped to his feet and is escorted out of the cell. |
| 1:58 | Plaintiff rinses his eyes at an eye wash. |
| 2:40 | Plaintiff is escorted into a hallway, then onto an elevator. |
| 4:36 | Plaintiff exits the elevator and is photographed by another officer. |
| 5:22 | Plaintiff is uncuffed and enters the shower area. |

[Doc. 27: Conventionally Filed Video].

9

## IV.  DISCUSSION

### A.  Exhaustion

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a § 1983 action.  42 U.S.C. § 1997e(a).  The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Id.  In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life.  534 U.S. 516, 532 (2002).  The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory."  Id. at 524 (citation omitted).  The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice.  Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law ... requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  548 U.S. 81, 90 (2006) (quoting Pozo

v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).  Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies.  Jones, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable. Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011).

The Defendants have forecast evidence that the Plaintiff did not submit any grievance complaining that his mace-covered sheets were not changed for three days after the January 25, 2025 incident, that his cell was "vaped" on another occasion, or that he was left in the "vaped" cell for four days.  The Defendants have provided a forecast of evidence that the Plaintiff did not file any grievance mentioning these incidents whatsoever, despite having daily access to a tablet and a kiosk on which grievances could be submitted.  The Plaintiff has not attempted to demonstrate that he exhausted his claims, or that administrative remedies were unavailable him to do so.  The Court therefore concludes that the Plaintiff failed to satisfy the PLRA's minimum

requirements by filing a grievance giving jail officials fair notice of his claims. See generally Woodford, 548 U.S. at 89.

Accordingly, the Defendants' Motion for Summary Judgment for lack of exhaustion will be granted.[5]

**B.    Merits**

**1.    Excessive Force**

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment."  Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).  To prevail an excessive force claim, a pretrial detainee must demonstrate only that the force "purposely or knowingly used against him was objectively unreasonable."  Kingsley v. Hendrickson, 576 U.S. 389 (2015).  The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one."  Id.  In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Id. (citing Graham, 490 U.S. at 396).  A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an

---

[5] Exhaustion dismissals are generally without prejudice.  However, the dismissal in this case will be with prejudice because there is no genuine dispute of material fact regarding the merit of these claims as discussed *infra*.

individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002).

The forecast of evidence demonstrates that there is no genuine dispute of material fact regarding the Defendants' use of excessive force. First, the forecast shows that there was a legitimate need for the application of force. The Plaintiff repeatedly refused direct orders to put away his mattress, to hand over his tablet, and to get onto the ground. It was objectively reasonable for the Defendants to open the cell and apply one short burst of OC spray to preserve order, and to compel the Plaintiff's compliance. See Scarbro v. New Hanover Cnty., 374 F. App'x 366, 370 (4th Cir. 2010) (the court "must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough'") (quoting Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999), abrogated on other grounds by Short v. Hartman, 87 F.4th 593 (4th Cir. 2023)).

It was also objectively reasonable for Defendant Wyatt to enter the cell, grab the Plaintiff, and direct him to the mattress on the ground, when he refused to get on the ground after he was sprayed. See, e.g., Hernandez v.

Reynolds, No. 1:23-cv-755, 2025 WL 1744291, at *4 (M.D.N.C. June 24, 2025) (granting summary judgment for defendants who applied two closed fist strikes to plaintiff's head and took plaintiff to the ground to restrain him was "simply that necessary to [restore order and] maintain control ... [and] [a]ny use of force immediately ended" once defendants placed plaintiff into restraints).

The relationship between the need and the amount of force that was used is a factor that also weighs in favor of the Defendants. The forecast of evidence demonstrates that the Plaintiff refused several direct orders and that he became increasingly agitated during the incident.  The Plaintiff's escalating defiance left officers with no option other than to use increasing physical means to compel his compliance, including a short burst of pepper spray and limited hands-on force to secure him.  See Grayson, 195 F.3d at 696-97; see, e.g., Dale v. FNU Barnes, 1:23-cv-373, 2024 WL 4416440 (M.D.N.C. Oct. 4, 2024) (holding that it was appropriate for an officer to use a baton to place the plaintiff in an arm lock after initial attempts to control the plaintiff with his hands failed).

The forecast of evidence further demonstrates that the Defendants attempted to temper the use of force.  At first, the Plaintiff was verbally ordered to move his mattress.  When this failed, officers opened the cell door

14

and demanded that he turn over his tablet.  When repeated orders to turn over the tablet failed, the Plaintiff was finally pepper sprayed.  The Plaintiff then ignored orders to get on the ground and only then did Chief Deputy Wyatt use minimal hands-on force to secure him while restraints were applied.  The evidence, therefore, demonstrates that the Defendants used force only as necessary to gain control of the defiant Plaintiff and to restore order.

No reasonable jury could conclude, under these circumstances, that the Defendants used excessive force against the Plaintiff.  The Defendants' Motion for Summary Judgment will, therefore, be granted on the Plaintiff's excessive force claims.

### 2.    Conditions of Confinement

"[A] pretrial detainee has a right under the Due Process Clause to be free from punishment before his guilt is adjudicated."  Tate v. Parks, 791 Fed. App'x 387, 390 (4th Cir. 2019) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).  An individual pretrial detainee may raise a substantive due process challenge to his conditions of confinement "where they are so disproportionate or arbitrary that they are not related to legitimate penological objectives and amount to punishment."  Id. (citing Williamson v. Stirling, 912 F.3d 154, 174-76 (4th Cir. 2018)).  "To prevail on such a claim,

a detainee must show that the challenged treatment or conditions were either (1) imposed with an express intent to punish, or (2) not reasonably related to a legitimate nonpunitive objective, in which case an intent to punish may be inferred." Id. (citing Williamson, 912 F.3d at 178).

Here, the forecast of evidence demonstrates that the Defendants did not participate in, and did not direct, any inaction regarding the Plaintiff's sheets after the January 25 incident; the "vaping" of Plaintiff's cell on another occasion; or any inaction that left the Plaintiff in the vaped cell after that incident. No reasonable jury could conclude that the Defendants were involved in these incidents in any way, and accordingly, there is no genuine dispute whether the Defendants deprived him of his constitutional rights with regard to those conditions. Summary judgment will be granted in favor of the Defendants on the Plaintiff's conditions of confinement claims.

### 3. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether

that right was clearly established at the time of the alleged violation." <u>E.W.</u> <u>ex rel. T.W. v. Dolgos</u>, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." <u>Smith v. Ray</u>, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that the Defendants violated his constitutional rights, the Defendants are entitled to qualified immunity. As such, summary judgment for the Defendants would also be proper on this ground.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted, and this action is dismissed with prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 19] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE.**

The Clerk is respectfully instructed to enter a Clerk's Judgment in favor of the Defendant and to close this case.

17

Further, the Clerk is instructed to mail a copy of this Order to the Plaintiff at his address of record, and to him at the following address: Austin N. Hannon, Offender No. 1481002, Tabor Correctional Institution, 4600 Swamp Fox Highway West, Tabor City, NC 28463.

**IT IS SO ORDERED.**

Signed: August 6, 2026

Martin Reidinger
Chief United States District Judge